## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION

| | |
|---|---|
| MAACO FRANCHISOR SPV, LLC, AS SUCCESSOR-IN-INTEREST TO MAACO FRANCHISING, LLC | Civil Action No. _____ |
| Plaintiff, | **COMPLAINT FOR DAMAGES** |
| vs. | |
| CIPERCEN, LLC, A TEXAS LIMITED LIABILITY COMPANY, JORGE CEREIJO, INDIVIDUALLY, AND ANDRES BURZACO, INDIVIDUALLY, | |
| Defendants. | |

Plaintiff, **MAACO FRANCHISOR SPV, LLC, AS SUCCESSOR-IN-INTEREST TO MAACO FRANCHISING, LLC** (hereinafter referred to as "Maaco"), for its Complaint against Defendants, **CIPERCEN, LLC** (the "Corporate Defendant"), **JORGE CEREIJO** ("Cereijo"), and **ANDRES BURZACO** ("Burzaco") (collectively, the "Defendants"), alleges and says as follows:

### BRIEF INTRODUCTION

1.      By this action, Maaco seeks to recover amounts owed by Defendants pursuant to two separate franchise agreements related to two Maaco Centers (collectively "Franchise Agreements"), as well as amounts owed under a personal guaranty agreement executed by Cereijo and Burzaco.

### THE PARTIES

2.      Maaco is a limited liability company organized and existing under the laws of the State of Delaware, with its offices and principal place of business located at 440 South Church

Street, Suite 700, Charlotte, Mecklenburg County, North Carolina. Maaco acquired all rights, title and interest to the assets of Maaco Franchising, LLC including, without limitation, any interests in the documents described below.

3. Maaco is a Delaware limited liability company and its sole member is Driven Systems, LLC. Driven Systems, LLC is a Delaware limited liability company and its sole member is Driven Brands Funding, LLC. Driven Brands Funding, LLC is a Delaware limited liability company and its sole member is Driven Funding HoldCo, LLC. Driven Funding HoldCo, LLC is a Delaware limited liability company and its sole member is Driven Brands, Inc. Driven Brands, Inc. is a Delaware corporation with its principal place of business located at 440 S. Church Street, Suite 700, Charlotte, North Carolina 28202-2059. Thus, for jurisdictional purposes, Driven Brands, Inc., and in turn, Maaco Franchisor SPV, LLC, is a citizen of both Delaware and North Carolina.

4. Corporate Defendant is a Texas limited liability company with its address identified as 3201 W. Pioneer Parkway, Pantego, Texas 76013. Corporate Defendant's members are Cereijo, Burzaco, and Esvelova, Ltd. Esvelova, Ltd. is a Barbados company with Guardian Nominees (Barbados) Ltd. as director and Trident Corporate Service (Barbados) Ltd. as secretary. Each of the aforementioned Barbados companies is registered in Barbados with no other known business addresses other than the Barbados addresses registered to each company, if any. Corporate Defendant is wholly owned by Cereijo and Burzaco, and is therefore a citizen of Barbados.

5. Cereijo is a resident and citizen of Texas with a last known address of 2300 Kathryn Lane, Apt. 3728, Plano, Texas 75025. Based upon information and belief, Cerijo's current address is 1513 Blue Jay Circle, Weston, Florida 33327.

6. Burzaco is a resident and citizen of Mexico with a last known address of Antonio Sola #49, Col. Condesa Del. Cuauhtemoc, Mexico City, Mexico 06140.

### JURISDICTION AND VENUE

7. Maaco operates and franchises automobile maintenance and repair centers throughout the United States.

8. Maaco's franchise operations are conducted and supervised from its world headquarters located in Charlotte, Mecklenburg County, North Carolina.

9. Maaco and Defendants have carried on a continuous course of direct communications by mail and by telephone through Maaco's world headquarters.

10. The course of dealing between Maaco and its franchisees, including Defendants, shows that Maaco's decision-making authority is currently vested in its world headquarters.

11. This Court has *in personam* jurisdiction over Defendants because Maaco's claims arise out of promises made in Charlotte, Mecklenburg County, North Carolina, by virtue of Rule 4(k)(1)(A) of the Federal Rules of Civil Procedure and North Carolina's "long arm" statute, N.C. Gen. Stat. § 1-75.4. Furthermore, in the Franchise Agreements, Defendants acknowledged that any disputes relating to the franchise agreements shall be governed under the laws of North Carolina. In the franchise agreements, Defendants specifically agreed that "any action arising out of or relating to this [Franchise] Agreement shall be commenced, litigated and concluded only in state or federal court of general jurisdiction in the county or district where MAACO's principal offices are located, which as of the date of this Agreement is Charlotte, North Carolina. Franchisee irrevocably submits to the jurisdiction of the state and federal courts located in Mecklenburg County, North Carolina, and irrevocably waives any objection he may have to either the jurisdiction or venue of such courts …" See Exhibit, A p. 30, ¶ 25.B., Exhibit G, p. 29, ¶ 25.B.

12.     Finally, Defendants have availed themselves to the State of North Carolina and its jurisdiction through their systematic and continuous contacts with the State of North Carolina.  For example, pursuant to the Franchise Agreements and personal guaranty, Defendants were to pay all amounts due to Maaco at its corporate headquarters in North Carolina.  In addition, under the Franchise Agreements, Defendants were required to: (1) attend refresher training courses at Maaco's headquarters in North Carolina; (2) submit each of the Center's records to Maaco's headquarters in North Carolina; and (3) initiate contact with Maaco in North Carolina.

13.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332 because Maaco is a citizen of Delaware and North Carolina, Defendants **are citizens of Texas and Mexico**, and the amount in controversy is over $75,000.00, exclusive of interests and costs.

14.     Venue of this action in this District and Division is proper in accordance with 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claim occurred in this District, including, but not limited to, Defendants' failure to perform obligations required to be performed in this District, namely, paying amounts due in this District under the Franchise Agreements, personal guaranty and other documents described below.

15.     Venue also is appropriate in this District and Division because Defendants contractually consented to this venue in the franchise agreements and personal guaranty.

### **GENERAL ALLEGATIONS**

*The Nature of Maaco's Business*

16.     Maaco grants franchises to qualified persons to establish and operate automobile maintenance and repair centers under a standard, unique and uniform system developed by Maaco,

and grants to those persons the right to use Maaco's federally-registered trade name, logo and other proprietary marks (the "Maaco System").

17.     Since its founding, Maaco remains engaged in the business of franchising Maaco Centers that utilize the Maaco System to specialize in automobile maintenance, repair, and other automotive products and services.

18.     Maaco franchises and licenses the right to operate an automobile maintenance and repair center using the Maaco System through written franchise agreements with its franchisees.

19.     Pursuant to Maaco's franchise agreements, every Maaco franchisee is required by its franchise agreement to operate its franchise in accordance with the high standards, specifications, policies, and procedures set by Maaco and outlined in each franchise agreement.

20.     As partial consideration for Maaco's agreement to disclose the Maaco System and allow its franchisees to use the Maaco System and display Maaco's trade names, service marks, and trademarks, all franchisees agree to maintain and preserve full and accurate books, records, and accounts of their Maaco business for at least five (5) years from the dates of their preparation. In connection with such obligation, Maaco is permitted, at all reasonable times, to examine the books, records and tax returns of the business to ensure compliance with the terms and conditions of the franchise agreement.

21.     Maaco's primary source of revenue from the operation of its business is derived from the payment of franchise royalties based on weekly sales reported by the franchisees. In addition, the substantial majority of Maaco's advertising budget on behalf of its franchisees is derived from the advertising contributions remitted to Maaco by its franchisees.

*Center 2749*

22. On February 29, 2016, Maaco entered into a Franchise Agreement with Corporate Defendant relating to the operation of the franchised Maaco automobile maintenance and repair center ("2749 Franchise Agreement"), located at 2235 Michigan Avenue, Arlington, Texas 76013 ("Center 2749"). A true and correct copy of the 2749 Franchise Agreement is attached hereto and incorporated herein by reference as **Exhibit "A."**

23. On February 29, 2016, Corporate Defendant entered into an Addendum to the 2749 Franchise Agreement wherein Maaco and Corporate Defendant agreed to a specific franchise fee, agreed to reduce and/or waive some of the fees, and provided a sliding scale of royalties during the first three years of operation to be paid under the 2749 Franchise Agreement ("2749 Addendum"). A true and correct copy of the 2749 Addendum is attached hereto and incorporated herein by reference as **Exhibit "B."**

24. On or about February 29, 2016, Cereijo and Burzaco executed a personal guaranty agreement in favor of Maaco promising to jointly and severally guaranty all of the obligations of Corporate Defendant under the 2749 Franchise Agreement ("Personal Guaranty"). A true and correct copy of the Personal Guaranty is attached hereto and incorporated herein by reference as **Exhibit "C."**

25. Under Paragraph 3 of the 2749 Franchise Agreement, the term of the franchise for Center 2749 was to run for fifteen (15) years beginning on the date Center 2749 opens for business as determined by Maaco. Center 2749 opened for business on November 15, 2016.

26. Pursuant to Paragraph 5.A.(4) of the 2749 Franchise Agreement as amended by the 2749 Addendum, Corporate Defendant was obligated to pay to Maaco a "continuing weekly royalty fee during the term of this Agreement in an amount equal to two percent (2%) the first year

6

of operation, four percent (4%) the second year of operation, six percent (6%) the third year of operation and nine percent (9%) every year thereafter of the gross receipts of the Center." <u>See</u> <u>Exhibit A</u>, p. 6, ¶ 5.A.(4), <u>Exhibit B</u>, p. 1-2, ¶ C.

27.     Pursuant to Paragraph 5.D. of the 2749 Franchise Agreement, "[i]f any payment to MAACO under this Agreement or any other agreement or account with MAACO or its affiliates or subsidiaries is overdue, Franchisee shall pay to MAACO or its affiliates or subsidiaries interest compounded monthly on such amount from the due date until paid at the maximum rate permitted by law (or, in the absence of such rate, a rate equal to one and one half percent (1.5%) per month)." <u>See</u> <u>Exhibit A</u>, p. 8, ¶ 5.D.

28.     With respect to Defendants' obligation to maintain books and records relating to Center 2749, Paragraph 12.A. provides that "[d]uring the term of this Agreement, Franchisee shall maintain and preserve, for at least seven (7) years from the dates of their preparation, full complete and accurate books, records, and accounts in accordance with generally accepted accounting principles and in the form and manner prescribed by MAACO from time to time." <u>See</u> <u>Exhibit A</u>, p. 17, ¶ 12.A.

29.     With respect to Defendants' audit obligations, the 2749 Franchise Agreement provides that "Franchisee shall submit to MAACO, for review or auditing, such other forms, reports, records, information and data as MAACO may request, including the Center's and Franchisee's personal income tax returns." <u>See</u> <u>Exhibit A</u>, p. 17, ¶ 12.D. Further, the Franchise Agreement provides that "MAACO or its designated agents shall have the right at all reasonable times to examine, at its expense, the books, records, and tax returns of Franchisee. MAACO shall also have the right, at any time, to have an independent audit made of the books of Franchisee. If any inspection or audit should reveal that any payments due MAACO have been understated in

7

any report to MAACO, then Franchisee shall immediately pay to MAACO or its affiliates or subsidiaries the amount understated upon demand, plus interest from the date such amount was due until paid, at the rate specified in Paragraph 5F hereof. Additionally, if any inspection or audit should reveal that any payments due MAACO have been understated in any report to MAACO... Franchisee shall reimburse MAACO for any and all costs and expenses connected with the inspection, any reinspection, or with the audit (including, without limitation, the charges of any independent accountant, attorneys' fees and travel expenses, room, board, and compensation of MAACO employees)." See Exhibit A, p. 17-18, ¶ 12.E.

30.     Under the 2749 Franchise Agreement, Corporate Defendant was required to continue the operation of the center and continue to pay all royalties, advertising contributions and other fees to Maaco on a weekly basis during the term of the 2749 Franchise Agreement.

31.     Corporate Defendant breached its obligations under the 2749 Franchise Agreement by failing to pay all royalties, advertising contributions and other fees to Maaco on a weekly basis during the term of the 2749 Franchise Agreement.

32.     In addition, pursuant to paragraph 15 of the 2749 Franchise Agreement, Maaco was permitted to terminate the Franchise Agreement if, among other things, the Franchisee failed to perform its obligations required thereunder including the failure to make the required weekly payments.

33.     On July 20, 2017, Maaco provided Defendants with written notice of default based on Defendants' failures to: (i) remit to Maaco weekly payment of royalties; (ii) remit to Maaco weekly advertising contributions; and (iii) remit to Maaco payment for any and all outstanding invoices for paint and supplies purchased ("2749 Notice of Default").  A true and correct copy of the 2749 Notice of Default is attached hereto and incorporated herein by reference as **Exhibit "D."**

8

34.     Because Defendants failed and refused to cure the defaults set forth in the 2749 Notice of Default, on September 19, 2017, Maaco sent to Defendants a notice of termination which terminated Defendants' rights to operate Center 2749 and license to utilize any of Maaco's intellectual property and proprietary systems ("2749 Notice of Termination").   A true and correct copy of the 2749 Notice of Termination is attached hereto and incorporated herein by reference as **Exhibit "E."**   In the 2749 Notice of Termination, Maaco granted Defendants a limited 90-day license to continue to use Maaco's trademarks and proprietary business systems at Center 2749 in an attempt to allow Defendants to sell Center 2749, as long as the transfer took place on or before December 18, 2017.

35.     On June 11, 2018, Maaco sent to Defendants a formal notice of revocation of limited license and additional demand for payment to remove any doubt that the 90-day license granted in the 2749 Notice of Termination was terminated and to demand payment of the amounts that remained outstanding ("2749 Revocation of License"). A true and correct copy of the 2749 Revocation of License is attached hereto and incorporated herein by reference as **Exhibit "F."**

36.     Upon termination of the 2749 Franchise Agreement, Defendants were required to, among other things, pay all sums due and owing to Maaco and return to Maaco, at Defendants' expense, all manuals, records, files, instructions, correspondence, all materials related to operating the franchised business, including without limitation, brochures, agreements, and all other materials relating to operation of the Center.  To date, Defendants have failed and refused to satisfy these obligations.  At the time of termination, the outstanding accounts receivable owed under the 2749 Franchise Agreement totaled $36,852.12.

37.     Finally, Paragraph 25.E. of the 2749 Franchise Agreement provides that Maaco shall be entitled to its reasonable attorneys' fees, costs, and court costs in its efforts to enforce the terms of the Franchise Agreement. See Exhibit A, p. 31, ¶ 25.E.

38.     As a result of these material breaches of the 2749 Franchise Agreement, Maaco has suffered damages.

39.     In addition, Maaco is entitled to recover lost profits for the damages caused by Corporate Defendant not performing its obligations for the remaining term of the 2749 Franchise Agreement.   Due to the premature closing of the Center in violation of the 2749 Franchise Agreement, Maaco is entitled to lost profits, less any amounts saved by Maaco due to Center 2749's premature closure.

40.     Maaco's prospective profits are not conjectural, remote, or speculative because Maaco is able to determine its lost profits with reasonable certainty. Using the Center 2749's actual historical sales data, Maaco can calculate a reasonably certain amount of its lost profits by determining the average royalty and advertising fund contributions due to it from Corporate Defendant and subtracting the incremental savings resulting from the premature closing of the Center.

41.     The amount of Maaco's lost royalties is reasonably calculated by using the average weekly historical gross receipts for the Center multiplied by the sliding scale of percentages due as continuing weekly royalty fees provided in the 2749 Franchise Agreement and Addendum, for the remainder of the franchising period.

42.     The amount of Maaco's lost weekly advertising contributions is reasonably calculated by taking the average weekly historical gross receipts and multiply that by eight percent

(8%), pursuant to Paragraph 5.B. of the 2749 Franchise Agreement, and multiply that sum by the number of weeks remaining in the franchising period.

43. Therefore, Maaco is entitled to lost royalties and advertising contributions under the terms of the 2749 Franchise Agreement because those amounts are: (i) reasonably certain to have been realized except for the breach of contract; (ii) calculable and/or measurable with reasonable certainty; and (iii) were reasonably supposed to have been within the contemplation of the parties at the time they entered the 2749 Franchise Agreement.

44. In addition, despite their promises to guaranty performance by Corporate Defendant under the 2749 Franchise Agreement and further, to be jointly and severally bound by all terms and conditions of the 2749 Franchise Agreement, including make all payments due and owing should Corporate Defendant fail to make any payments, Cereijo and Burzaco have failed and refused to satisfy all obligations owed under the 2749 Franchise Agreement.

*Center 2140*

45. On September 30, 2014, Maaco entered into a Franchise Agreement with Corporate Defendant relating to the operation of the franchised Maaco automobile maintenance and repair center ("2140 Franchise Agreement"), located at 3308 E. Pioneer Parkway, Arlington, Texas 76010 ("Center 2140"). A true and correct copy of the 2140 Franchise Agreement is attached hereto and incorporated herein by reference as **Exhibit "G."**

46. Also, on September 30, 2014, Cereijo and Burzaco executed a personal guaranty in favor of Maaco promising to jointly and severally guaranty all of the obligations of Corporate Defendant under the 2140 Franchise Agreement ("2140 Personal Guaranty"). A true and correct copy of the 2140 Personal Guaranty is attached hereto and incorporated herein by reference as **Exhibit "H."**

47.     On October 24, 2014, Corporate Defendant entered into an Amendment to the 2140 Franchise Agreement wherein Maaco and Corporate Defendant agreed that the fifteen-year term of the 2140 Franchise Agreement would begin to run on October 15, 2014 and expire on October 15, 2029 ("2140 Amendment"). A true and correct copy of the 2140 Amendment is attached hereto and incorporated herein by reference as **Exhibit "I."**

48.     Pursuant to Paragraph 5.A.(4) of the 2140 Franchise Agreement as amended by the 2140 Amendment, Corporate Defendant was obligated to pay to Maaco a "continuing weekly royalty fee during the term of this Agreement in an amount equal to nine percent (9%) of the gross receipts of the Center." See Exhibit G, p. 6-7, ¶ 5.A.(4).

49.     Pursuant to Paragraph 5.D. of the 2140 Franchise Agreement, "[i]f any payment to MAACO under this Agreement or any other agreement or account with MAACO or its affiliates or subsidiaries is overdue, Franchisee shall pay to MAACO or its affiliates or subsidiaries interest compounded monthly on such amount from the due date until paid at the maximum rate permitted by law (or, in the absence of such rate, a rate equal to one and one half percent (1.5%) per month)." See Exhibit G, p. 7, ¶ 5.D.

50.     With respect to Defendants' obligation to maintain books and records relating to Center 2140, Paragraph 12.A. provides that "[d]uring the term of this Agreement, Franchisee shall maintain and preserve, for at least seven (7) years from the dates of their preparation, full complete and accurate books, records, and accounts in accordance with generally accepted accounting principles and in the form and manner prescribed by MAACO from time to time." See Exhibit G, p. 16, ¶ 12.A.

51.     With respect to Defendants' audit obligations, the 2140 Franchise Agreement provides that "Franchisee shall submit to MAACO, for review or auditing, such other forms,

reports, records, information and data as MAACO may request, including the Center's and Franchisee's personal income tax returns." See Exhibit G, p. 17, ¶ 12.D. Further, the Franchise Agreement provides that "MAACO or its designated agents shall have the right at all reasonable times to examine, at its expense, the books, records, and tax returns of Franchisee. MAACO shall also have the right, at any time, to have an independent audit made of the books of Franchisee. If any inspection or audit should reveal that any payments due MAACO have been understated in any report to MAACO, then Franchisee shall immediately pay to MAACO or its affiliates or subsidiaries the amount understated upon demand, plus interest from the date such amount was due until paid, at the rate specified in Paragraph 5F hereof. Additionally, if any inspection or audit should reveal that any payments due MAACO have been understated in any report to MAACO... Franchisee shall reimburse MAACO for any and all costs and expenses connected with the inspection, any reinspection, or with the audit (including, without limitation, the charges of any independent accountant, attorneys' fees and travel expenses, room, board, and compensation of MAACO employees)." See Exhibit G, p. 17, ¶ 12.E.

52.     Under the 2140 Franchise Agreement, Corporate Defendant was required to continue the operation of the center and continue to pay all royalties, advertising contributions and other fees to Maaco on a weekly basis during the term of the 2140 Franchise Agreement.

53.     Corporate Defendant breached its obligations under the 2140 Franchise Agreement by failing to pay all royalties, advertising contributions and other fees to Maaco on a weekly basis during the term of the 2140 Franchise Agreement.

54.     In addition, pursuant to paragraph 15 of the 2140 Franchise Agreement, Maaco was permitted to terminate the Franchise Agreement if, among other things, Franchisee failed to

perform its obligations required thereunder including the failure to make the required weekly payments.

55. On July 20, 2017, Maaco provided Corporate Defendant with written notice of default based on Corporate Defendant's failures to: (i) remit to Maaco weekly payment of royalties; (ii) remit to Maaco weekly advertising contributions; and (iii) remit to Maaco payment for any and all outstanding invoices for paint and supplies purchased ("2140 Notice of Default"). A true and correct copy of the 2140 Notice of Default is attached hereto and incorporated herein by reference as **Exhibit "J."**

56. Because Corporate Defendant failed and refused to cure the defaults set forth in the 2140 Notice of Default, on September 19, 2017, Maaco sent to Corporate Defendant a notice of termination which terminated Corporate Defendant's rights to operate Center 2140 and license to utilize any of Maaco's intellectual property and proprietary systems ("2140 Notice of Termination"). A true and correct copy of the 2140 Notice of Termination is attached hereto and incorporated herein by reference as **Exhibit "K."** In the 2140 Notice of Termination, Maaco granted Defendants a limited 90-day license to continue to use Maaco's trademarks and proprietary business systems at Center 2140 in an attempt to allow Defendants to sell Center 2140, as long as the transfer took place on or before December 18, 2017.

57. On June 11, 2018, Maaco sent to Corporate Defendant a formal notice of revocation of limited license and additional demand for payment to remove any doubt that the 90-day license granted in the 2140 Notice of Termination was terminated and to demand payment of the amounts that remained outstanding ("2140 Revocation of License"). A true and correct copy of the 2140 Revocation of License is attached hereto and incorporated herein by reference as **Exhibit "L."**

58. Upon termination of the 2140 Franchise Agreement, Defendants were required to, among other things, pay all sums due and owing to Maaco and return to Maaco, at Defendants' expense, all manuals, records, files, instructions, correspondence, all materials related to operating the franchised business, including without limitation, brochures, agreements, and all other materials relating to operation of the Center. To date, Defendants have failed and refused to satisfy these obligations. At the time of termination, the outstanding accounts receivable owed under the 2140 Franchise Agreement totaled $162,940.43.

59. Finally, Paragraph 25.E. of the 2140 Franchise Agreement provides that Maaco shall be entitled to its reasonable attorneys' fees, costs, and expenses in its efforts to enforce the terms of the Franchise Agreement. See Exhibit G, p. 30, ¶ 25.E.

60. As a result of these material breaches of the 2140 Franchise Agreement, Maaco has suffered damages.

61. In addition, Maaco is entitled to recover lost royalties and advertising contributions for the damages caused by Corporate Defendant not performing its obligations for the remaining term of the 2140 Franchise Agreement. Due to the premature closing of the Center in violation of the 2140 Franchise Agreement, Maaco is entitled to lost royalties and advertising contributions, less any amounts saved by Maaco due to Center 2140's premature closure.

62. Maaco's prospective lost royalties and advertising contributions are not conjectural, remote, or speculative because Maaco is able to determine those amounts with reasonable certainty. Using the Center 2140's actual historical sales data, Maaco can calculate a reasonably certain amount of its lost royalties and advertising contributions by determining the average royalty and advertising fund contributions due to it from Corporate Defendant and subtracting the incremental savings resulting from the premature closing of the Center.

15

63. The amount of Maaco's lost royalties is reasonably calculated by using the average gross receipts for the Center multiplied by the continuing weekly royalty fee of nine percent (9%) provided in Paragraph 5.A.(4) of the 2140 Franchise Agreement and Amendment, for the remainder of the franchising period.

64. The amount of Maaco's lost weekly advertising contributions is reasonably calculated by taking the average weekly historical gross receipts and multiply that by eight percent (8%), pursuant to Paragraph 5.B. of the 2140 Franchise Agreement, and multiply that sum by the number of weeks remaining in the franchising period.

65. Therefore, Maaco is entitled to lost royalties and advertising contributions under the terms of the 2140 Franchise Agreement because those lost profits are: (i) reasonably certain to have been realized except for the breach of contract; (ii) calculable and/or measurable with reasonable certainty; and (iii) were reasonably supposed to have been within the contemplation of the parties at the time they entered the 2140 Franchise Agreement.

66. In addition, despite their promises to guaranty performance by Corporate Defendant under the 2140 Franchise Agreement and further, to be jointly and severally bound by all terms and conditions of the 2140 Franchise Agreement, including make all payments due and owing should Corporate Defendant fail to make any payments, Cereijo and Burzaco have failed and refuse to satisfy all obligations owed under the 2140 Franchise Agreement.

67. Defendants' breaches have required Maaco to retain legal counsel to pursue the claims alleged herein, and Maaco is responsible for the reasonable fees and costs incurred. Defendants are obligated to reimburse Maaco for the amounts incurred under the terms of the franchise agreements and guaranty agreements described above.

68.     On April 26, 2018, Maaco sent to Defendants a demand for payment explaining that Defendants were indebted to Maaco in the amount of $294,320.98 related to the defaults under the 2749 Franchise Agreement and 2140 Franchise Agreement ("Final Demand").  Despite this demand and Defendants' collective obligation to pay the same, Defendants have failed and refused to pay the amounts due and owing to Maaco.  A true and correct copy of the Final Demand is attached hereto and incorporated herein by reference as **Exhibit "M."**

69.     All conditions precedent to the institution of this action have been satisfied, discharged, excused, and/or waived.

**COUNT I**
**Breach of the Franchise Agreement Against Corporate Defendant**
**2749 Franchise Agreement**

70.     Maaco repeats and re-alleges paragraphs 1 through 69 above, as if fully set forth herein.

71.     Maaco has performed all of the obligations required of it under the 2749 Franchise Agreement with regard to Center 2749.

72.     Despite Maaco's performance, Corporate Defendant has materially breached its obligations and promises under the 2749 Franchise Agreement by failing to pay to Maaco all royalties owed to it pursuant to the 2749 Franchise Agreement.

73.     Accordingly, Maaco is seeking judgment against Corporate Defendant for the total amount of the past due royalties and any other balance owed.

74.     As a direct and proximate cause of Corporate Defendant's failure to pay the royalties, advertising contributions and other fees owed under the 2749 Franchise Agreement, Maaco has directly and proximately suffered actual damages, as of the filing of this action, in the amount of $103,961.49.

75.     In addition, Maaco is entitled to recover lost royalties and advertising contributions for the damages caused by Corporate Defendant not performing its obligations for the remaining term of the 2749 Franchise Agreement.  Due to the premature closing of the Center in violation of the 2749 Franchise Agreement, Maaco is entitled to lost royalties and advertising contributions, less any amounts saved by Maaco due to Center 2749's premature closure.

76.     Maaco's prospective lost royalties and advertising contributions are not conjectural, remote, or speculative because Maaco is able to determine those amounts with reasonable certainty. Using the Center 2749's actual historical sales data, Maaco can calculate a reasonably certain amount of its lost royalties and advertising contributions by determining the average royalty and advertising fund contributions due to it from Corporate Defendant and subtracting the incremental savings resulting from the premature closing of the Center.

77.     The amount of Maaco's lost royalties is reasonably calculated by using the average weekly historical gross receipts for the Center multiplied by the sliding scale of percentages due as continuing weekly royalty fees provided in the 2749 Franchise Agreement and Addendum, for the remainder of the franchising period.

78.     The amount of Maaco's lost weekly advertising contributions is reasonably calculated by taking the average weekly historical gross receipts and multiply that by eight percent (8%), pursuant to Paragraph 5.B. of the 2749 Franchise Agreement, and multiply that sum by the number of weeks remaining in the franchising period.

79.     Therefore, Maaco is entitled to lost royalties and advertising contributions under the terms of the 2749 Franchise Agreement because those lost royalties and advertising contributions are: (i) reasonably certain to have been realized except for the breach of contract; (ii) calculable and/or measurable with reasonable certainty; and (iii) were reasonably supposed to have

been within the contemplation of the parties at the time they entered the 2749 Franchise Agreement.

WHEREFORE, Maaco Franchisor SPV, LLC hereby respectfully requests that this Honorable Court enter, against Corporate Defendant for:

(a)      Prejudgment interest;

(b)      Judgment for all amounts due and owing under the 2749 Franchise Agreement, including past due royalties and any other balance owed;

(c)      Judgment for lost future royalties;

(d)      Judgment for Maaco's reasonable attorneys' fees together with court costs and expenses of litigation pursuant to the 2749 Franchise Agreement;

(e)      Equitable relief in the form of a full accounting of the books, records, and tax returns for Corporate Defendant; and

(f)      All other relief this Honorable Court deems just and proper.

**COUNT II**
**Breach of the Franchise Agreement Against Corporate Defendant**
**2140 Franchise Agreement**

80.      Maaco repeats and re-alleges paragraphs 1 through 69 above, as if fully set forth herein.

81.      Maaco has performed all of the obligations required of it under the 2140 Franchise Agreement with regard to Center 2140.

82.      Despite Maaco's performance, Corporate Defendant has materially breached its obligations and promises under the 2140 Franchise Agreement by failing to pay to Maaco all royalties owed to it pursuant to the 2140 Franchise Agreement.

83.     Accordingly, Maaco is seeking judgment against Corporate Defendant for the total amount of the past due royalties and any other balance owed.

84.     As a direct and proximate cause of Corporate Defendant's failure to pay the royalties, advertising contributions and other fees owed under the 2140 Franchise Agreement, Maaco has directly and proximately suffered actual damages, as of the filing of this action, in the amount of $215,777.55.

85.     In addition, Maaco is entitled to recover lost royalties and advertising contributions for the damages caused by Corporate Defendant not performing its obligations for the remaining term of the 2140 Franchise Agreement. Due to the premature closing of the Center in violation of the 2140 Franchise Agreement, Maaco is entitled to lost royalties and advertising contributions, less any amounts saved by Maaco due to Center 2140's premature closure.

86.     Maaco's prospective lost royalties and advertising contributions are not conjectural, remote, or speculative because Maaco is able to determine those amounts with reasonable certainty. Using the Center 2140's actual historical sales data, Maaco can calculate a reasonably certain amount of its lost royalties and advertising contributions by determining the average royalty and advertising fund contributions due to it from Corporate Defendant and subtracting the incremental savings resulting from the premature closing of the Center.

87.     The amount of Maaco's lost royalties is reasonably calculated by using the average gross receipts for the Center multiplied by the continuing weekly royalty fee of nine percent (9%) provided in Paragraph 5.A(4) of the 2140 Franchise Agreement and Amendment, for the remainder of the franchising period.

88.     The amount of Maaco's lost weekly advertising contributions is reasonably calculated by taking the average weekly historical gross receipts and multiply that by eight percent

(8%), pursuant to Paragraph 5. B of the 2140 Franchise Agreement, and multiply that sum by the number of weeks remaining in the franchising period.

89.     Therefore, Maaco is entitled to lost royalties and advertising contributions under the terms of the 2140 Franchise Agreement because those amounts are: (i) reasonably certain to have been realized except for the breach of contract; (ii) calculable and/or measurable with reasonable certainty; and (iii) were reasonably supposed to have been within the contemplation of the parties at the time they entered the 2140 Franchise Agreement.

WHEREFORE, Maaco Franchisor SPV, LLC hereby respectfully requests that this Honorable Court enter, against Corporate Defendant for:

(a)     Prejudgment interest;

(b)     Judgment for all amounts due and owing under the 2140 Franchise Agreement, including past due royalties and any other balance owed;

(c) Judgment for lost future royalties;

(d)     Judgment for Maaco's reasonable attorneys' fees together with court costs and expenses of litigation pursuant to the 2140 Franchise Agreement;

(e)     Equitable relief in the form of a full accounting of the books, records, and tax returns for Corporate Defendant; and

(f) All other relief this Honorable Court deems just and proper.

## COUNT III
## Breach of 2749 Personal Guaranty Against Cereijo

90.     Maaco repeats and re-alleges paragraphs 1 through 69 above, as if fully set forth herein.

91.     Maaco has performed all of the obligations required of it under the 2749 Franchise Agreement and 2749 Personal Guaranty.

92. Despite Maaco's performance, Corporate Defendant materially breached its obligations and promises under the 2749 Franchise Agreement by failing to pay to Maaco all amounts due and owing which it promised to pay including royalties, advertising contributions and other fees.

93. In addition, Corporate Defendant failed to operate the Center 2749 through the end of the term of the 2749 Franchise Agreement.

94. As a direct and proximate cause of Corporate Defendant's failure to perform under the 2749 Franchise Agreement, Maaco has been damaged.

95. In addition to the damages caused by failing to pay the amounts past due and owing, Maaco has also been damaged for the premature closing of the Center for which it seeks lost future royalties.

96. Under the terms of the 2749 Personal Guaranty, Cereijo unconditionally promised to pay all amounts due and owing and satisfy all obligations due under the 2749 Franchise Agreement in the event that Corporate Defendant defaulted. Despite this promise and demand from Maaco, Cereijo has failed and refused to perform under the 2749 Personal Guaranty.

97. Maaco has been damaged as a result of Cereijo's defaults under the 2749 Personal Guaranty.

98. Accordingly, Maaco is seeking judgment against Cereijo for the total amount due under the 2749 Franchise Agreement and 2749 Personal Guaranty, plus interest and attorneys' fees.

WHEREFORE, Maaco Franchisor SPV, LLC hereby respectfully requests that this Honorable Court enter, against Cereijo for:

(a)     Prejudgment interest;

(b)     Judgment for all amounts due and owing under the 2749 Franchise Agreement and 2749 Personal Guaranty;

(c)     Judgment for lost future royalties and advertising contributions;

(d)     Judgment for Maaco's reasonable attorneys' fees; and

(e)     All other relief this Honorable Court deems just and proper.

## COUNT IV
## Breach of 2140 Personal Guaranty Against Cereijo

99.     Maaco repeats and re-alleges paragraphs 1 through 69 above, as if fully set forth herein.

100.    Maaco has performed all of the obligations required of it under the 2140 Franchise Agreement and 2140 Personal Guaranty.

101.    Despite Maaco's performance, Corporate Defendant materially breached its obligations and promises under the 2140 Franchise Agreement by failing to pay to Maaco all amounts due and owing which it promised to pay including royalties, advertising contributions and other fees.

102.    In addition, Corporate Defendant failed to operate the Center 2749 through the end of the term of the 2140 Franchise Agreement.

103.    As a direct and proximate cause of Corporate Defendant's failure to perform under the 2140 Franchise Agreement, Maaco has been damaged.

104.    Under the terms of the 2140 Personal Guaranty, Cereijo unconditionally promised to pay all amounts due and owing and satisfy all obligations due under the 2140 Franchise Agreement in the event that Corporate Defendant defaulted. Despite this promise and demand from Maaco, Cereijo has failed and refused to perform under the 2140 Personal Guaranty.

105.     Maaco has been damaged as a result of Cereijo's defaults under the 2140 Personal Guaranty.

106.     In addition to the damages caused by failing to pay the amounts past due and owing, Maaco has also been damaged for the premature closing of the Center for which it seeks lost future royalties.

107.     Accordingly, Maaco is seeking judgment against Cereijo for the total amount due under the 2140 Franchise Agreement and 2140 Personal Guaranty, plus interest and attorneys' fees.

WHEREFORE, Maaco Franchisor SPV, LLC hereby respectfully requests that this Honorable Court enter, against Cereijo for:

(a)     Prejudgment interest;

(b)     Judgment for all amounts due and owing under the 2140 Franchise Agreement and 2140 Personal Guaranty;

(c)     Judgment for lost future royalties and advertising contributions;

(d)     Judgment for Maaco's reasonable attorneys' fees; and

(e)     All other relief this Honorable Court deems just and proper.

## COUNT V
## Breach of 2749 Personal Guaranty Against Burzaco

108.     Maaco repeats and re-alleges paragraphs 1 through 69 above, as if fully set forth herein.

109.     Maaco has performed all of the obligations required of it under the 2749 Franchise Agreement and 2749 Personal Guaranty.

110.     Despite Maaco's performance, Corporate Defendant materially breached its obligations and promises under the 2749 Franchise Agreement by failing to pay to Maaco all

amounts due and owing which it promised to pay including royalties, advertising contributions and other fees.

111.     In addition, Corporate Defendant failed to operate the Center 2749 through the end of the term of the 2749 Franchise Agreement.

112.     As a direct and proximate cause of Corporate Defendant's failure to perform under the 2749 Franchise Agreement, Maaco has been damaged.

113.     Under the terms of the 2749 Personal Guaranty, Burzaco unconditionally promised to pay all amounts due and owing and satisfy all obligations due under the 2749 Franchise Agreement in the event that Corporate Defendant defaulted.  Despite this promise and demand from Maaco, Burzaco has failed and refused to perform under the 2749 Personal Guaranty.

114.     Maaco has been damaged as a result of Burzaco's defaults under the 2749 Personal Guaranty.

115.     In addition to the damages caused by failing to pay the amounts past due and owing, Maaco has also been damaged for the premature closing of the Center for which it seeks lost future royalties.

116.     Accordingly, Maaco is seeking judgment against Burzaco for the total amount due under the 2749 Franchise Agreement and 2749 Personal Guaranty, plus interest and attorneys' fees.

WHEREFORE, Maaco Franchisor SPV, LLC hereby respectfully requests that this Honorable Court enter, against Burzaco for:

(a)     Prejudgment interest;

(b)     Judgment for all amounts due and owing under the 2749 Franchise Agreement and 2749 Personal Guaranty;

(c)     Judgment for lost future royalties and advertising contributions;

(d)     Judgment for Maaco's reasonable attorneys' fees; and

(e)     All other relief this Honorable Court deems just and proper.

## COUNT VI
## Breach of 2140 Personal Guaranty Against Burzaco

117.     Maaco repeats and re-alleges paragraphs 1 through 69 above, as if fully set forth herein.

118.     Maaco has performed all of the obligations required of it under the 2140 Franchise Agreement and 2140 Personal Guaranty.

119.     Despite Maaco's performance, Corporate Defendant materially breached its obligations and promises under the 2140 Franchise Agreement by failing to pay to Maaco all amounts due and owing which it promised to pay including royalties, advertising contributions and other fees.

120.     In addition, Corporate Defendant failed to operate Center 2749 through the end of the term of the 2140 Franchise Agreement.

121.     As a direct and proximate cause of Corporate Defendant's failure to perform under the 2140 Franchise Agreement, Maaco has been damaged.

122.     In addition to the damages caused by failing to pay the amounts past due and owing, Maaco has also been damaged for the premature closing of the Center for which it seeks lost future royalties.

123.     Under the terms of the 2140 Personal Guaranty, Burzaco unconditionally promised to pay all amounts due and owing and satisfy all obligations due under the 2140 Franchise Agreement in the event that Corporate Defendant defaulted.  Despite this promise and demand from Maaco, Burzaco has failed and refused to perform under the 2140 Personal Guaranty.

124.     Maaco has been damaged as a result of Burzaco's defaults under the 2140 Personal Guaranty.

125.     Accordingly, Maaco is seeking judgment against Burzaco for the total amount due under the 2140 Franchise Agreement and 2140 Personal Guaranty, plus interest and attorneys' fees.

WHEREFORE, Maaco Franchisor SPV, LLC hereby respectfully requests that this Honorable Court enter, against Burzaco for:

(a)     Prejudgment interest;

(b)     Judgment for all amounts due and owing under the 2140 Franchise Agreement and 2140 Personal Guaranty;

(c)     Judgment for lost future royalties and advertising contributions;

(d)     Judgment for Maaco's reasonable attorneys' fees; and

(e)     All other relief this Honorable Court deems just and proper.

Dated August 22, 2018.                    */s/David L. Tkach*
                                          David L. Tkach, Esq.
                                          N.C. Bar No. 34252
                                          dtkach@tkachlaw.com
                                          David L. Tkach, PLLC
                                          2300 E. 7th Street, Suite 101-A
                                          Charlotte, North Carolina 28204

                                          *Co-Counsel (Pro Hac Vice Forthcoming)*

                                          Dennis D. Leone, Esq.
                                          Florida Bar No. 069401
                                          dleone@shankmanleone.com
                                          Shankman Leone, P.A.
                                          707 N. Franklin Street, 5th Floor
                                          Tampa, Florida 33602

                                          *Attorneys for Maaco Franchisor SPV, LLC*